(13 App. Div. 11.)

LUKENS IRON & STEEL CO. v. PAYNE et al.

(Supreme Court, Appellate Division, Third Department. January 6, 1897.)

1. ATTACHMENT—DISPOSING OF PROPERTY WITH FRAUDULENT INTENT—CHATTEL MORTGAGE.

The presumption of fraud arising from failure to file a chattel mortgage which was not accompanied by delivery of the property (2 Rev. St. p. 136, § 5; Laws 1833, c. 279) is sufficient to authorize an attachment against the mortgagor, under Code Civ. Proc. § 636, subd. 2, on the ground that he has disposed of his property with intent to defraud his creditors.

2. CORPORATIONS—ACTION BY FOREIGN CORPORATIONS—PLEADING.

A complaint by a foreign corporation which does not show that the corporation does business in New York, or that the action is on a contract made by it therein, need not allege that the corporation has obtained a certificate, under Laws 1892, c. 687, § 15, providing that no foreign corporation doing business in New York can sue on a contract made by it therein until it has obtained a certificate that it has complied with the corporation law.

Appeal from special term, Chemung county.

Action by the Lukens Iron & Steel Company against Benjamin N. Payne and David W. Payne, in which there was an attachment of defendants' property. From an order denying a motion by Harriet Land, a judgment creditor of defendants, to vacate the attachment, made on the papers on which the attachment was granted, and affidavits showing her subsequent judgment lien, she appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Baldwin & Baldwin, for appellant.
Alex C. Eustace, for respondent.

LANDON, J. Upon the merits we think the order should be affirmed. The action was to recover a sum of money for merchandise sold and delivered, and for services rendered. The warrant of attachment was issued upon the ground that the defendants had assigned and disposed of a large part of their property with intent to defraud their creditors, and that they were about to assign and dispose of other property owned by them with like intent. The appellant contends that plaintiff's affidavits fail to show the

existence of such grounds. The affidavit of the plaintiff's manager, after setting forth the formal requisites, states:

"I have to-day called upon said defendants, at their said manufacturing establishment in the city of Elmira, and had a long talk with both of said defendants. Both of said defendants have admitted the correctness of plaintiff's claim and causes of action set forth in said complaint. They both told me that they have covered up all their property by mortgages; that they have given a mortgage upon all their personal property of every description to the Chemung Canal Bank, and another upon all their real property to said bank. Neither of said mortgages has been filed or recorded in the office of the clerk of said county of Chemung. Said defendants informed me that said mortgages were given two or three weeks, or longer, ago. When I called upon said defendants to-day, they were both actively engaged in the charge of said manufacturing establishment. They were giving instructions to employés, and were in the exclusive control and charge of said establishment, and performing the usual duties incidental to the control and charge of such an establishment. They both told me that it would do the plaintiff no good to sue its claims, set forth in the complaint herein, for the reason that, if they were sued, they would shut down, and the bank would take possession of all the property they owned, and prevent plaintiff reaching any part of it on execution. Both of said defendants told me that they owed large sums of money, which they were unable to pay, and that they had quite a number of merchandise creditors. They told me that the plaintiff and the Syracuse Tube Company were the largest of the merchandise creditors. They informed me that nobody was secured by said mortgage but said bank. Both said defendants also informed me that they were negotiating a sale of their said manufacturing establishment, and the personal property forming its equipment, and their stock, to some parties in Elmira, whose names they declined to disclose to me. They said they hoped to effect that sale before the 8th of October. They told me that, if that sale was made, the claim of the plaintiff, set forth in the complaint herein, would be paid in full. Both of said defendants declined to give me a statement of their present financial condition, and they declined to give me the names of their creditors, except as I have stated them herein. They also declined to give me the amount or terms of payment of either of said mortgages to said bank."

The traveling salesman of the plaintiff makes the like affidavit, and adds that, upon inquiry, the same day, at the Chemung Canal Bank, for information respecting the financial condition of the defendants, its cashier said he could give it, but was not in a position to say anything.

Under the Revised Statutes (2 Rev. St. p. 136, § 5) the chattel mortgage given by defendants to the bank upon their personal property, the property not having been immediately delivered and followed by an actual and continued change of possession, is presumed to be fraudulent and void, as against the plaintiff, a creditor of the mortgagors; and these facts are conclusive evidence of fraud, unless the presumption is repelled by other evidence. Chapter 279, Laws 1833, however, permitted the filing of such a chattel mortgage, and in this way permitted nondelivery of the mortgaged property to the mortgagor, and his nonpossession of it, but made an unfiled chattel mortgage absolutely void as against the creditors of the mortgagor. Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11; Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073. Thus we have in the second statute the declaration that this unfiled chattel mortgage was absolutely void, and in the first statute a rule of evidence by which its fraudulent character is to be determined.

The appellants urge that this is a mere statutory declaration of

fraud, and that the Code requires actual, intentional fraud; and they cite Casola v. Vasquez, 147 N. Y. 258, 41 N. E. 517, and Lexow v. Marble Co., 16 Misc. Rep. 133, 38 N. Y. Supp. 831, affirmed 5 App. Div. 624, 39 N. Y. Supp. 412. In the cases cited the statute declared the transfers void, but did not, as in the case before us, lay down a rule of evidence by which their fraudulent character could be determined.

In Casola v. Vasquez, Andrews, C. J., said:

"To authorize an attachment under subdivision 2, § 636, of the Code, there must be an actual or intended fraud upon creditors,—such fraud as was contemplated by the statute of Elizabeth and similar statutes."

Our statutes respecting the fraudulent sales or transfers of personal property, with intent to delay, hinder, or defraud creditors, are derived from the statute of 13 Eliz., which declared all such transfers void as against such defrauded creditors. 5 Reeves, Eng. Law (Finlason's Ed.) 244; Sturtevant v. Ballard, 9 Johns. 337, revisors' notes.

The provision in regard to filing chattel mortgages (chapter 279, Laws 1833) was introduced as an exception to the rule, which grew up under the statute of Elizabeth and is embraced in the Revised Statutes, that a paper transfer of title, secretly given, without change of possession, was prima facie evidence of a fraudulent intent to defraud the creditors injured thereby. Twyne's Case, 3 Coke, 80a. The reason is plain. Sufficient publicity is supposed to be given the chattel mortgage by filing it, and thus the danger from a secret transfer lessened, if not wholly averted; but the statute declares that, if the privilege of filing is not embraced, the mortgage becomes absolutely void, instead of presumptively so.

Is there any evidence of the absence of a fraudulent intent? What did the defendants mean by the statements they made to the plaintiff's agents? They assumed to speak both for themselves and for the mortgagee,—the cashier of the latter declining to speak. Their declarations seem to imply a threat to the plaintiff that, if it brought suit against them, the defendants, with the co-operation of the mortgagee, would so wield the mortgage as to prevent plaintiff from reaching any part of defendants' property on execution. The threat was accompanied with a vague promise of payment if defendants should effect an alleged contemplated sale of their entire property. Thus, to the statutory presumption and statutory conclusive evidence of fraud are added the declarations of defendants, from which the inference of active and actual fraud, and certainly of the intent to hinder and delay the plaintiff in the collection of its debt, might be drawn.

The defendants are residents of this state. The complaint states that the plaintiff is a corporation organized under the laws of the state of Pennsylvania, engaged in manufacturing, with its principal place of business at Coatesville, in that state. The appellants claim that, under section 15, c. 687, Laws 1892, the plaintiff cannot maintain this action, because it has not alleged that it has

obtained from the secretary of state "a certificate that it has complied with all the requirements of law to authorize it to do business in this state." The section provides that:

"No foreign stock corporation doing business in this state without such certificate shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate."

It does not appear that the plaintiff is doing business in this state. It therefore does not appear that it needs such certificate. In Lumber Co. v. Bussell, 84 Hun, 114, 31 N. Y. Supp. 1107, to which we are cited, it did not appear that the foreign corporation, plaintiff, was engaged in doing business in this state. The appellant cites Ladenburg v. Bank, 87 Hun, 269, 33 N. Y. Supp. 821, and other cases against foreign corporations, in which it is held that the jurisdictional facts specified in section 1780, Code Civ. Proc., must be alleged.

Section 1779 permits a foreign corporation to maintain an action "in like manner and subject to the same regulations as where the action is brought by a domestic corporation, except as otherwise specially prescribed by law." It does not appear that the contract upon which the action was based was made in this state. We think that, as it is necessary for the plaintiff to allege the conditions conferring jurisdiction against foreign corporations, so it is necessary for the defendant to allege the exceptions, if the plaintiff does not state them, which exclude foreign corporations from invoking our jurisdiction against their domestic debtors.

The order should be affirmed, with $10 costs and disbursements. All concur.